IN THE UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| PATRICIA SLOAN, individually and On behalf of others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>VIDALIA CITY SCHOOL SYSTEM,<br><br>*Defendant*. | Case No: _____ |

COLLECTIVE ACTION COMPLAINT

Plaintiff Patricia Sloan ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Complaint against Defendant Vidalia City School System ("Defendant"), for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, which violations arise from Defendant's failure to pay minimum wage and overtime.

Nature of the Case

1.  Defendant is a school district within the state of Georgia which employs bus drivers to transport students to and from school, including: transportation of elementary, middle and high school students to school in the morning and home in the afternoon; transportation of high school students to and from a community college for dual enrollment classes; transportation of students to and from alternative school; and transportation home from after school programs.

2.  Plaintiff was employed by Defendant as a school bus driver from approximately August 29, 2022 through June 30, 2023.

3.  At various time during her employment, Plaintiff drove students to and from school in the morning and afternoon (the "Regular Shift"), as well as multiple trips to and from classes at

1

a local community college, one shift to alternative school, and one shift home after an after-school program ("the Extra Shifts"), often in the same day.

4. Defendant contracted and was obligated to pay Plaintiff a $1100 "salary" per month for the Regular Shift, and $15 an hour for any Extra Shifts she drove.

5. Plaintiff was paid once a month at the end of the month. Although the school year runs for ten months, bus drivers are paid the $1100 "salary" for all twelve months of the year.

6. Plaintiff also received a $100 bonus at Christmas, as did all bus drivers.

7. The FLSA applies to school bus drivers such as Plaintiff.

8. The FLSA requires that all employees receive at least minimum wage for every hour worked and that all non-exempt employees, such as Plaintiff, receive one- and one-half times her their hourly wage for hours worked in excess of forty (40) hours per week.

9. Moreover, all time spent working driving a school bus-whether during a Regular Shift or Extra Shifts-is to be combined for purposes of determining wages and overtime owed under the FLSA.

10. Plaintiff brings this case individually and on behalf of other similarly situated employees based on Defendant's unlawful deductions from wages, which resulted in a failure to pay minimum wage, and Defendant's failure to pay overtime.

## Jurisdiction and Venue

11. The FLSA authorizes court actions by private parties to recover damages for violations of its wage and hour rules. Jurisdiction over Plaintiff's FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. §1331.

12. Venue in this Court is proper under 28 U.S.C. § 1391 because the events underlying this Complaint occurred in Toombs County, Georgia.

13. Service can be made upon the Defendant through its governing body, the Vidalia City Board of Education, by and through its Chairperson.

Factual Allegations

14. Plaintiff incorporates paragraphs 1-13 of this Complaint as if fully set forth herein.

15. On or about October 22, 2022, Plaintiff broke her back while attempting to get into her school bus from the back door. Plaintiff was forced to use the back door due to a malfunction with the front door, which Defendant had failed to properly repair.

16. Plaintiff was forced to take workers compensation leave while she recovered from her injury.

17. Upon information and belief, Defendant underreported Plaintiff's wages to its workers' compensation carrier, resulting in an underpayment of benefits to Plaintiff. That is, Defendant reported only Plaintiff's $1100 "salary" and not the other wages she earned.

18. Defendant did not supplement Plaintiff's workers' compensation benefit it any way while she was on leave; she received only her shortchanged workers compensation payment from the insurance carrier. She did, however, receive the $100 Christmas bonus that was unrelated to hours worked and paid to all bus drivers.

19. Plaintiff returned to work on or about March 23, 2023. She resumed driving her Regular Shift and many Extra Shifts until the end of the school year in late May 2023. Plaintiff routinely worked over forty (40) hours per week between March and May 2023.

20. In addition, Plaintiff drove a summer school route in June 2023.

21. Despite working over forty (40) hours for the last week of March, Plaintiff did not receive a paycheck at all in March 2023. She assumed it was because she had only worked one

week and that she had missed the payroll cut off. She further assumed her March wages would be reflected in her April paycheck.

22. At the end of April, after working well over forty (40) hours per week since her return in March 2023, Plaintiff received a paycheck for eight dollars ($8).

23. When Plaintiff inquired with Defendant's Human Resources Director why she had essentially not been paid anything for five (5) weeks of work, Plaintiff was told that, because she was "on salary", SHE had to pay DEFENDANT "$100 per day for every day she was 'out sick'" (i.e., on workers' compensation leave). She was further told that this was the school district's policy.

24. In addition to this explanation making no sense and being patently in violation of the law, the amount of $100 per day exceeds the $1100 per month salary she actually received for working, which breaks down to $55 per workday ($1100 divided by 20 workdays per month = $55 per day).

25. Plaintiff asked for a copy of her pay stub, but she was told to "get it herself" from the electronic portal. Plaintiff is not computer savvy and could not access the portal.

26. After working another month of approximately fifty (50) hours per week, Plaintiff received a check for eleven dollars ($11) at the end of May 2023.

27. Plaintiff drove a summer school route for three weeks in June 2023 for approximately three hours per day five days per week. She received a check for $111 at the end of June 2023.

28. Thus, for working well over forty (40) hours per week for nine (9) weeks, and about twelve (12) hours per week for three (3) weeks, Plaintiff was paid a total of one hundred twenty-eight dollars ($128).

29. Plaintiff clocked in for her Regular Shift but filled out time sheets for her Extra Shifts. All of these pay records are in the possession of Defendant, and Plaintiff does not have access to any of them.

30. By the end of June 2023, she was told she should be "close to paid up," and should start receiving regular checks again. However, her employment was terminated at the end of June 2023 for reasons unrelated to her claims.

31. Upon knowledge and belief, Defendant does not have an employee handbook or any posted pay policies. However, Defendant's practice of taking its employees' wages as punishment when they return from leave appears to be a policy of Defendant's, one which has likely affected other employees.

32. As a result of Defendant's willful and flagrant violation of the FLSA, Plaintiff worked practically without pay for her work for over three months. She lost her car and is on the verge of losing her home.

33. Defendant is liable to Plaintiff for its knowing and willful violations of the FLSA.

## Counts

### I. Failure to Pay Minimum Wage under the FLSA

34. Plaintiff incorporates paragraphs 1-33 of this Complaint as if fully set forth herein.

35. Defendant's unlawful policy and practice of denying Plaintiff wages for work performed and essentially stealing her wages resulted in Plaintiff not receiving minimum wage for all hours worked between March 2023 and the end of June 2023.

36. Defendant's actions were knowing, willful, deliberate and in violation of the FLSA.

37. Defendant's actions have affected Plaintiff and all others who have been subjected to the same policy and practice.

38. Defendant did not act in good faith or in reliance on any statute, case law, opinion letter or other FLSA regulation in refusing to pay Plaintiff or others for their work and for essentially stealing their wages and penalizing them for taking leave.

39. Plaintiff and those similarly affected by Defendant's unlawful conduct are entitled to all wages plus liquidated damages, costs, and all attorneys' fees related to the pursuit of this action.

## II   Failure to Pay Overtime Under the FLSA

40. Plaintiff incorporates paragraphs 1-39 of this Complaint as if fully set forth herein.

41. In addition to failing to pay Plaintiff minimum wage for all hours worked between March 2023 and the end of June 2023, Defendant failed to calculate or pay Plaintiff one- and one-half times her hourly rate for all hours of overtime she worked in a given week after her return from leave.

42. Plaintiff, and others similarly situated, were entitled to such overtime pay for all hours over forty (40) that they worked in a single work week.  Instead, Defendant essentially stole these wages from their employees.

43. Defendant's actions were knowing, willful and deliberate and in violation of the FLSA.

44. Plaintiff, and others similarly situated, are entitled to overtime pay, liquidated damages, and costs and attorney's fees incurred in pursuing this action.

## Collective Action Allegations

45. Plaintiff incorporates paragraphs 1-44 of this Complaint as if fully set forth herein.

46. Plaintiff was told when she inquired about Defendant's failure to pay her that she was charged a flat fee of $100 per day for each day she was on "sick leave", even though there is

no basis in the law for such a charge and $100 bore no connection to her actual pay rate. It was implied, if not stated, that this was the Defendant's policy.

47. Upon knowledge and belief, such a charge back or wage reduction is, in fact, the policy and practice of the Defendant and others have been subjected to the same policy.

48. Thus, Plaintiff brings her FLSA claim for failure to pay minimum wage as an "opt in" collective action pursuant to 29 U.S.C, § 216(b) on behalf of all persons employed by Defendant who have been charged a daily rate or reduction, which charge or reduction was subtracted from their wages, after returning from workers' compensation or sick leave.

49. The class is defined as "all non-exempt employees who have been charged a daily fee or whose wages have been set off by such fee upon return to work from any medical or workers compensation leave in the three years prior to any opt in date, which charge or deduction caused such wages to fall below the federal statutory minimum wage." The FLSA claims asserted herein may be pursued by those who opt into this case.

50. The commonality of employees in such class is: (1) all such employees are non-exempt and required to be paid at least the federal minimum wage of $7.25 per hour for all hours worked; (2) all employees were charged a daily rate or their wages were reduced based on a workers compensation or other sick or medical leave; and (3) the subject charge or set off caused such employee's hourly wage to drop below the minimum wage for at least some hours worked during a pay period.

51. In addition, Plaintiff seeks class certification for all non-exempt employees whom Defendant failed to pay proper wages for overtime worked, whether or not such failure was due to improper deductions in pay, for the time period reaching back three years from any opt in date.

<u>Plea for Relief</u>

52. Plaintiff incorporates paragraphs 1-51 of this Complaint as if fully set forth herein.

53. Based upon the foregoing, Plaintiff seeks an Order:

   a. awarding her unpaid wages, both regular and overtime;

   b. awarding her an equal amount in liquidated damages due to Defendants' knowing, willful and deliberate violation of the law;

   c. awarding her all cost of this litigation, including all reasonable attorney's fees incurred by counsel in prosecuting this case.

54. Plaintiff further pleads for collective action certification for the above-described classes or class and sub-class.

55. Plaintiff further pleads for a trial by jury of all claims asserted in this Complaint.

Respectfully submitted this <u>14th</u> day of December, 2023.

HALL, GILLIGAN, ROBERTS & SHANLEVER, LLP

<u>/s/ Kristen W. Goodman</u>
KRISTEN W. GOODMAN
Georgia Bar No: 300881
kgoodman@hgrslaw.com
KERI M. MARTIN
Georgia Bar No: 679803
kmartin@hgrslaw.com
7402 Hodgson Memorial Drive, Suite 110
Savannah, Georgia 31406
Telephone: (912) 777-6636

*Counsel for Plaintiff*